THE SPALDING LUMBER COMPANY *et al.*

*v.*

HENRY A. BROWN *et al.*

*Opinion filed February 14, 1898.*

1. MECHANICS' LIENS—*under section 24 of act of 1895 a school building is a public improvement.* A school building falls within the term "public improvement," as used in section 24 of the Mechanic's Lien law of 1895, (Laws of 1895, p. 235,) and a school board falls within the description "officials of this State, county, township, city or *municipality*," also used therein.

2. SAME—*sub-contractor's lien becomes perfect upon service of notice.* Under section 24 of the Lien law of 1895 a sub-contractor's lien for labor or materials furnished for a public improvement is created by performing such labor or furnishing such material, and becomes perfect as to all funds not paid over or bonds and warrants not delivered, upon service of the notice on the officials, as specified.

3. SAME—*sub-contractor obtaining an order from contractor is not entitled to priority of payment.* An order on a school board, given by a contractor, while his claim was but a chose in action, to a sub-contractor for the amount due the latter for labor or material furnished for a school building, cannot be paid in full as against other sub-contractors who have served notices of their claims on such board, as required by section 24 of the Mechanic's Lien law of 1895, but only *pro rata* with the other claims.

4. BONDS—*when sureties on a contractor's bond are not liable to sub-contractors.* Sureties on a contractor's bond, given to a school board to secure a full performance of a contract to erect a school building and as protection against liens thereon, are not liable to sub-contractors for the amount of their unpaid claims against the contractor, where there is no breach of the bond as to the school board and the bond does not protect sub-contractors.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

The board of education of Kickapoo Union School District No. 22, etc., filed its bill in chancery alleging that it entered into a written contract with one H. A. Brown for the erection of a school house for said district, at the

price of $4398, payable in five installments. A copy of the contract was filed with the bill. It was alleged in the bill that the contractor having failed to complete the building according to the terms of the contract, the complainant took the matter out of his hands, pursuant to a provision of the contract, and completed the building, and that there still remained due Brown a considerable sum of money, which complainant was ready and willing to pay to him or to the sub-contractors who were claiming it, some of them demanding priority over others, wherefore the bill prayed that Brown and the sub-contractors should interplead in respect to the unpaid amount. It was further alleged that when the written contract was entered into, Brown gave a bond, with sureties, for the faithful performance of his undertaking, and that complainant was ready to assign the bond for the benefit of the sub-contractors, if so required by the court. The contractor, and Mrs. H. A. Brown, who signed the contract with him, his sureties on the bond, and his creditors, the sub-contractors, were all made parties to the bill.

Such proceedings were had that it was determined there remained in the hands of the complainant, unpaid on the contract, the sum of $1189.13, and it was ordered that upon payment thereof complainant should be dismissed, its costs of the suit to be taxed and deducted from said fund. It was further ordered that the defendant creditors should interplead, and the cause was referred to the master to inquire and report in what way they were entitled to participate in the fund which had been deposited in the custody of the court. The report of the master was subsequently presented, and this was followed by a decree finding the amount due each of the sub-contractors, the aggregate being $3095.96, leaving a deficit of $2023.38, which it was ordered should be paid into court by the contractor and Mrs. H. A. Brown, who signed the contract with him, and it was ordered that the sub-contractors should share *pro rata* in the fund then in

the custody of the court. For the purpose of reversing the decree, two of the sub-contractors, the Spalding Lumber Company and Myers & Miller, appealed to the Appellate Court, where the decree of the circuit court was affirmed, and in order to reverse the judgment of the Appellate Court they have appealed to this court.

McQUISTON & FREDERICK, and BARR & MAYNE POLLOCK, for appellants:

A part of a debt or chose in action may be assigned in equity, and in such case a trust will be created in favor of the equitable assignee of the fund, and will constitute an equitable lien upon it which equity will enforce. Nor does it make any difference that the fund is not due yet or that it is not in actual existence. The order will operate as an equitable assignment when it becomes due or comes into existence. *Warren* v. *Bank*, 149 Ill. 9; *Phillips* v. *Edsall*, 127 id. 535.

An order given to a sub-contractor or material-man by a contractor, upon the owner, amounts to an assignment of the contractor's interest, and after notice the owner is bound to apply the fund to the payment of the order, and the filing of subsequent liens does not affect the liability of the owner to pay the order. *Lauer* v. *Dunn*, 115 N. Y. 405; *Brill* v. *Tuttle*, 81 id. 454; *Beardsley* v. *Cook*, 143 id. 143; *Murray* v. *Micoline*, 31 N. Y. Sup. 1109; *Kelly* v. *Syracuse*, id. 283; *Board of Education* v. *Duparquet*, 24 Atl. Rep. 922.

When payment has been made in good faith, a lien notice only attaches to what remains after said payments are deducted. In other words, the lien only attaches to the amount the owner is indebted to the contractor at the time notice is served. *Shaw* v. *Chicago Sash Co.* 144 Ill. 520; *Stock Yards* v. *O'Reilly*, 85 id. 546.

An equitable assignee does not even take subject to existing equities of third persons, if they are latent. *Silverman* v. *Bullock*, 98 Ill. 11; *Himrod* v. *Gilman*, 147 id. 203.

A mechanic's lien statute is in derogation of common right, and must be construed strictly.   *Cook* v. *Heald*, 21 Ill. 425; *Brady* v. *Anderson*, 24 id. 110; *Rothberger* v. *Dupuy*, 64 id. 453; *Shaw* v. *Chicago Manf. Co.* 144 id. 520.

KERRICK & BRACKEN, for appellees T. F. Harwood & Sons:

School boards or districts are municipal corporations. *Trustees of Schools* v. *Douglas*, 17 Ill. 209.

A school board is a municipal corporation created for a special purpose, and its powers are expressly limited by statute.   *School Board* v. *Thompson*, 5 Minn. 280.

School boards have no power to accept building orders.  If they do so, the orders are not binding.  *Peers* v. *Board of Education*, 72 Ill. 508; *Watts* v. *McLean*, 28 Ill. App. 537; *Bourdeaux* v. *Coquard*, 47 id. 254.

An assignee takes a non-negotiable instrument subject not only to the equities of the original parties, but also to the equities of third persons.   *Sumner* v. *Waugh*, 56 Ill. 539.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Upon looking into the record it appears that the contractor, H. A. Brown, gave the Spalding Lumber Company an order, which reads as follows:

"$948.00.          "GIBSON CITY, FORD CO., ILL., *Aug. 14, '95.*
"*Geo. Dooley, Clerk, and John Davis, President,*
                   *of School Board, Downs Township 22, McLean Co., Ill.*
"Please pay the Spalding Lumber Co., or order, nine hundred forty-eight dollars ($948), less freight on four cars of brick and three cars of lumber, being in full for the four cars of brick and three cars of lumber.   You will pay the above installments as the architect certifies, as my payments are due.
                                        H. A. BROWN.

Less freight on lumber ........................................................$187 74
  "   freight on brick............................................................. 150 50
                                                                              ———————
                                                                              $338 24"

This order was presented to the board of education August 17, 1895, but not paid.   A second order for $82.65

was given on September 13 of the same year, and presented within three days thereafter, but payment was refused. It also appears that H. A. Brown gave Myers & Miller an order for $385, which was presented to the board for payment August 5, 1895, and payment refused. The two appellants who hold these orders claimed in the circuit and Appellate Courts, and claim here, that under these orders they are entitled to a priority over the other sub-contractors in the fund in the hands of the school board.

Section 24 of the Lien law provides: "Any person who shall furnish material, apparatus, fixtures, machinery or labor to any contractor for a public improvement in this State, shall have a lien on the money, bonds or warrants due or to become due such contractor for such improvement: *Provided*, such person shall, before any payment or delivery thereof is made to such contractor, notify the officials of this State, county, township, city or municipality whose duty it is to pay such contractor, of his claim by a written notice and the full particulars thereof. It shall be the duty of such officials so notified to withhold a sufficient amount to pay such claim until it is admitted or by law established, and thereupon to pay the amount thereof to such person, and such payment shall be a credit on the contract price to be paid to such contractor. Any officer violating the duty hereby imposed upon him shall be liable on his official bond to the person serving such notice for the damages resulting from such violation, which may be recovered in an action at law in any court of competent jurisdiction. There shall be no preference between the persons serving such notice, but all shall be paid *pro rata*, in proportion to the amount due under their respective contracts." Hurd's Stat. 1897, p. 1040.

It is first claimed in the argument that a school building is not a public improvement, within the meaning of section 24 of the Lien law. This position is predicated on the argument that the act, in designating the officers

to be notified, omits school officers, whereas if the legislature had intended to include school officials they would have been mentioned. It will be observed that the section provides for notice to officers of the State, county, township, city or municipality. In the use of the word "municipality," after the word "city," it is apparent the legislature intended that the word "municipality" should be construed to mean some other or different political division from those which might fall under the designation of "city,"—otherwise we would have two words used in the section meaning the same thing, which it will not be presumed the legislature ever intended. We are inclined to the opinion that the legislature intended that a school building should fall within the description of a public improvement, and a school board may be included within the term "municipality," within the meaning of the statute under consideration.

Under the above section of the statute a lien is conferred upon the person who may furnish material, etc., or labor, to any contractor, upon the money, bonds or warrants due or to become due to the contractor. In order to avail of the lien conferred, the sub-contractor is only required to serve a notice in writing on the official before the money is paid or before the bonds or warrants are delivered to the contractor. Here the notices were served by the sub-contractors upon the school board before the money in question had been paid to the contractor, and unless the plain provision of the statute is to be disregarded, the sub-contractors who furnished material are entitled to protection. But it is said in the argument: "The giving of these orders operated, in equity, as a transfer of so much of the funds due or to become due the contractor as was specified in the orders. That amount, in equity, was as effectually taken out from the amount due or to become due Brown, the contractor, as if it had been actually paid to appellants at the time these orders were deposited with the board of education."

Under section 24 of the Lien law it is plain that the lien is created by the performance of the labor or the furnishing of the materials, and the lien of the sub-contractor becomes perfect as 'to all funds not paid over or bonds or warrants not delivered, upon service of notice on the officials. The statute makes no provision for the giving of orders by the contractor which may operate as an assignment of any part of the fund agreed to be paid for the construction of the building, nor is there any provision of the statute authorizing the school board to accept such orders, and we see no ground upon which it can be held that an assignment of the fund, by order or otherwise, can defeat the lien created by statute. It is not pretended that the claim of the contractor was negotiable or that appellants are entitled to protection as purchasers of a negotiable instrument. The claim is, that the orders are to be regarded as an equitable assignment of the money due or to become due from the school board to the contractor. Treating the orders as an equitable assignment, they would not defeat the lien of the sub-contractors. The law is well settled that an assignee takes a non-negotiable instrument subject to all the infirmities which exist against it in the hands of the assignor, excepting latent equities of third persons. (*Sumner* v. *Waugh*, 56 Ill. 531; *Silverman* v. *Bullock*, 98 id. 11; *Himrod* v. *Gilman*, 147 id. 293; Daniell on Neg. Inst. sec. 726 b; Pomeroy's Eq. Jur. secs. 708, 714.) The claim of the contractor against the school board, when he executed the orders, was a mere chose in action, and appellants took the assignment of the claim subject to all equities existing in favor of those who had liens under the statute. The appellants, as assignees of the contractor, stand in his shoes, and they occupy no better position than he would have occupied if he had retained the claim in his own hands. There is only one mode of obtaining a lien upon the fund, and that is by serving the notice on the officers required by the statute. When the notice is served

the officers are compelled to retain in their hands a sufficient sum to pay the liens, and should there not be enough to pay the claims in full, then those serving notice are entitled to share in the fund *pro rata*. If, however, a contractor could defeat the lien of a sub-contractor by merely transferring the fund due or to become due, by giving an order, the statute creating a lien in favor of a person furnishing labor or material to a contractor for a public improvement would become a nullity, as the fund might be transferred immediately upon making the contract to erect the building.

Appellees have assigned as a cross-error that the circuit court erred in refusing to hold the sureties on the contractor's bond liable for the deficit of $2023.38 due the sub-contractors from H. A. Brown, the contractor, after deducting the $1189.13 in the hands of the complainant in the bill. The condition of the bond is as follows: "Now, if the said Henry A. Brown shall duly perform said contract and all the covenants and agreements therein contained, and shall pay and discharge from said premises all liens for material, labor or otherwise which may accrue on account of said building contract, then this obligation to be null and void, otherwise to be and remain in full force." This bond was given to the board of education for its protection and benefit. The board never claimed a breach of the bond, and there was no breach so far as the board was concerned. There were no liens against the premises and the building was completed, and there remained a balance in the hands of the board to be paid out under the contract, as was conceded by filing the bill of interpleader. The bond contained no provision under which the sureties became bound to protect sub-contractors, and no principle occurs to us under which they could be held liable on the bond.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*