SACHS et al. v. OHIO NAT. LIFE INS. CO.

No. 8550.

Circuit Court of Appeals, Seventh Circuit.

March 21, 1945.

See, also, D.C., 2 F.R.D. 348.

Sidney W. Mandel, Millard C. Eiseman and Lawrence J. West, all of Chicago, Ill., for appellant.

Karl Edwin Seyfarth and Benton Atwood, both of Chicago, Ill., for appellee.

Before MAJOR and KERNER, Circuit Judges, and BRIGGLE, District Judge.

MAJOR, Circuit Judge.

This appeal is from a decree of the District Court, entered November 19, 1943, dismissing plaintiffs' suit for want of equity. The action, commenced January 3, 1942, sought enforcement of a Re-insur-

ance Agreement entered into November 19, 1930, between the Ohio National Life Insurance Co. (defendant) and the American Old Line Insurance Co., by which, it was alleged, the former became liable for the constitutional (Illinois) super-added liability on 1398 shares of bank stock owned by the latter.

Much litigation has preceded the instant suit in an effort by plaintiffs as creditors and depositors of the Roseland State Savings Bank, an Illinois banking corporation, to enforce this liability. In our view, it is unnecessary to relate in detail this previous litigation. It is sufficient to observe that it was first sought to enforce this liability against the Ohio National in an amended complaint filed in the state court July 3, 1935. This cause was removed to the United States District Court, where a summary judgment was entered against the plaintiffs. This judgment was reversed by this court. Sachs et al. v. Ohio National Life Insurance Co., 7 Cir., 116 F.2d 113. On remandment, the defendant moved to dismiss the action for lack of jurisdiction over the subject matter. This motion was allowed by the District Court, from which no appeal was taken. The present action reasserted substantially the same cause of action and was dismissed by the District Court on the ground that the action was barred by the statute of limitations. Sachs v. Ohio Nat. Life Ins. Co., D.C., 44 F. Supp. 552. Upon appeal, this court again reversed and remanded the cause for trial on the merits. Sachs et al. v. Ohio National Life Insurance Co., 7 Cir., 131 F.2d 134. Thereupon the cause was referred to a Master who, after extensive hearings in which both documentary and oral testimony were introduced, recommended the dismissal of the complaint for want of equity. The court by its decree approved the recommendations of the Master, and from this decree the instant appeal comes.

Numerous issues are presented, but inasmuch as we are of the view that the court's action in dismissing the complaint was proper, we shall only consider the reasons assigned by the Master and the court: (1) the plaintiffs, not being parties to the Re-insurance Agreement, could not maintain an action thereon as third party beneficiaries, and (2) the parties to the Re-insurance Agreement did not intend that the defendant should assume the bank stockholders' liability.

At the time the Re-insurance Agreement was made, defendant was an Ohio corporation engaged in the life insurance business under the laws of that state, and the American Old Line was an Illinois corporation engaged in the same business under the laws of Illinois. The Roseland State Savings Bank was organized in 1909 under the banking laws of Illinois for the purpose of doing a general deposit and banking business in Chicago. It continued in such business until July 3, 1931, when it was placed in liquidation.

Plaintiffs cite and rely upon a number of cases, including several from Illinois, which have sustained the right of a third party beneficiary to maintain an action upon a contract made for the benefit of such party. The crucial question in the instant case, as in all such cases, is whether the contract relied upon was made for the benefit of third parties. As applied to the instant situation, the question is whether the Re-insurance Agreement was made for the benefit of plaintiffs as creditors of the bank—if so, they are entitled to maintain the instant action, otherwise they are not.

No good purpose could be served in analyzing the numerous cases relied upon by the respective parties as to the rule in Illinois. It is quite apparent that each case depends largely upon its facts. We shall merely state the rule as announced in a few of the leading cases. In Carson Pirie Scott & Co. v. Parrett, 346 Ill. 252, 257, 178 N.E. 498, 501, 81 A.L.R. 1262, the court stated the rule thus: "The rule is settled in this state that, if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct, he may sue on the contract; if incidental he has no right of recovery thereon."

Again, in Fleming v. Dillon, 370 Ill. 325, 333, 18 N.E.2d 910, 914, 120 A.L.R. 1218, the court stated: "If one person, for a valuable consideration, makes a promise to another for the benefit of a third person such third person may maintain an action upon the promise, without proof of any consideration flowing from the third person for whose benefit the promise is made."

This court, in Vilter Mfg. Co. v. Loring, 7 Cir., 136 F.2d 466, considered the right of a third party beneficiary to recover, and

after an analysis of the Illinois cases, on page 468 stated: "One may be a direct beneficiary under a contract of guaranty, or he may be a mere incidental beneficiary. If he belongs to the former class he may recover, but if to the latter he may not. * * * (Citing cases.) From these decisions we think it is clear that one claiming as a beneficiary may not recover under such a contract unless it may be concluded from the instrument that the parties thereto regarded him as a person primarily interested and that they desired and intended to secure to him personally the benefits of its provisions."

It has been held in numerous other cases that incidental benefits to third persons resulting from a contract to which they are not parties are insufficient to permit such third parties to sue on the contract. Searles v. City of Flora, 225 Ill. 167, 172, 80 N.E. 98; Seefeldt v. Wilgen, 193 Ill. App. 315, 317, 318; Reconstruction Finance Corporation v. Teter, 7 Cir., 117 F.2d 716, 728; Tilney v. City of Chicago, 7 Cir., 134 F.2d 682, 683.

■ Thus, before recovery can be had by a third party beneficiary, it must be shown that the contract was made for his direct benefit, or as sometimes stated primarily for his benefit, and that it is not sufficient that he be a mere incidental beneficiary. Furthermore, such a contract must be strictly construed in favor of the person against whom such liability is asserted.

■■ This brings us to a consideration of the facts, for the purpose of determining if the Re-insurance Agreement was made for the direct or primary benefit of the creditors of the bank. Inasmuch as both the Master and the District Court have found against the plaintiffs on this issue, it would be more accurate to state that we examine the facts with a view of ascertaining if the record affords any rational basis in support of such finding. If so, the finding of the lower court must be accepted by us. In this connection, it is pertinent to observe that the two officials, one of the defendant and the other of the American Old Line, who conducted the negotiations which culminated in the Re-insurance Agreement, both gave oral testimony which, if accepted, completely dispels plaintiffs' theory that the Agreement was for the benefit of the bank creditors. In fact, their testimony is to the effect that the bank stock was considered as an asset rather than a liability and that there was no intention on the part of either of the parties to the Agreement that it was for the benefit of the bank creditors, and that there was no intention on the part of either of the parties that defendant should or did assume any liability on account of the ownership of such stock by the American Old Line. Plaintiffs do not dispute but that this oral testimony supports the lower court's decree, but it is urged that it is inconsistent with the documentary proof and should, therefore, not be accepted. We agree with plaintiffs that the documentary proof, if inconsistent with the oral testimony, is controlling, but as we view the matter it is not inconsistent. In fact, the documentary proof, considered in the light of the circumstances and conditions which surrounded the parties, is of little, if any, benefit to plaintiffs' theory.

The creditors of the bank, or any liability which might arise from ownership of stock in the bank, are in no way mentioned or suggested in the Agreement, and a careful study of its provisions leaves little room for doubt but that it related solely to the insurance business. Its title, "Re-insurance Agreement," so indicates. The introductory clause is significant. It provides: "The American Old Line Insurance Company, * * * hereinafter called the 'Insurer,' and the Ohio National Life Insurance Company, * * * hereinafter called the 'Re-insurer,' hereby enter into a re-insurance agreement for re-insurance by the Re-insurer of the policies of the Insurer upon the following terms and conditions * * *."

Then follow thirteen provisions, all of which must be interpreted in connection with this introductory clause.

■ The provision relied upon by plaintiffs states: "Upon such transfer the Re-insurer shall assume and agree to discharge all of the contracts, including the renewal commission contract with H. W. Kingery, and liabilities of the Insurer, including the net reserve, and in addition, pay to the Insurer at the time of such transfer the sum of * * *."

Plaintiffs contend that by this language the defendant assumed all the obligations and liabilities of the American Old Line, including the statutory liability on bank stock. In our view, such contention is not tenable. The language of this provision, particularly when considered in connection with the introductory clause, shows rather

plainly, so we think, that the words, "all of the contracts * * * and liabilities of the Insurer," had reference only to the subject matter of the Agreement, that is, the re-insurance by defendant of the policies taken over from American Old Line. It is not reasonable to think that the parties contemplated liabilities of a nature entirely foreign to the insurance field. Other provisions of the Agreement are in harmony with this view. It contains a clause by which American Old Line warranted the accuracy of its records and books, upon which defendant expressly relied. The proof shows without question that this bank stock was carried on the books of American Old Line as an asset upon which dividends were being received. There was nothing to indicate that it was considered or treated as a liability. Also, the Agreement specifically provided: "The Re-insurer, after the transfer of said policies to it, shall be directly liable at the suit of and to any policy holder upon any such policy."

The fact that defendant was made directly liable to a designated class of creditors, coupled with failure to make mention of any other class, would seem to indicate that this Agreement was for the benefit of the former but not the latter.

Certainly it cannot be thought that payment of the bank stock liability was a primary object of the Re-insurance Agreement, nor that the Agreement was intended for the benefit of the plaintiffs and other creditors of the bank. We think it is equally certain that any benefits accruing to plaintiffs were merely incidental to the main and primary object which the parties sought to accomplish by the Re-insurance Agreement. Such being the situation, they are not entitled to maintain the action in their capacity as third party beneficiaries.

■■ At this point, we make brief reference to the contention advanced by plaintiffs that their right to maintain this action has been adjudicated in a prior suit. It appears from plaintiffs' brief (not shown by the record) that in a similar action between the same parties the District Court refused to dismiss the complaint on defendant's motion which challenged plaintiffs' right to maintain an action as third party beneficiaries. Subsequently, the court entered a summary judgment in favor of the defendant, which upon appeal was reversed. Sachs et al. v. Ohio National Life Insurance Co., 7 Cir., 116 F.2d 113. Upon remandment, the cause of action was dismissed for want of jurisdiction over the subject matter. Sachs et al. v. Ohio National Life Insurance Co., D.C., 44 F.Supp. 552, 553. We think no authority need be cited for the proposition that a ruling is not res adjudicata when made in a case subsequently dismissed for want of jurisdiction. Furthermore, the order refusing to dismiss was not final, which in itself removes it from the rule sought to be invoked.

■ Plaintiffs' contention that defendant intended to and did assume the bank stock liability of American Old Line is closely related to their right to maintain an action as third party beneficiaries. It seems pertinent to observe certain general principles which the courts have announced in determining whether a liability has been assumed. The intent of the contracting parties is of primary importance. International Co. of St. Louis v. Sloan, et al., 10 Cir., 114 F.2d 326, 329. Such intention must be determined from the purpose of the Agreement, the history of negotiations, contemporaneous expressions of the contracting parties and their acts of interpretation. White Star Bus Line v. People of Puerto Rico, 1 Cir., 75 F.2d 889, 891. In determining what the parties had in mind, not one, but all of the words of the contract must be construed together, and all of the surrounding facts and circumstances must be considered. Buchanan v. Swift, 7 Cir., 130 F.2d 483, 485.

■ In support of this assumption theory, plaintiffs again rely upon certain words of the Re-insurance Agreement (heretofore quoted), by which defendant agreed to "discharge all of the * * * liabilities of the Insurer." As heretofore pointed out, we think plaintiffs' interpretation of this language is far more inclusive than the circumstances will justify. By its provisions the Agreement was limited to the re-insurance of risks of policyholders of the American Old Line and relevant insurance matters. It was based on the books of account of American Old Line, which were warranted to be correct and which contained no reference to bank stock liability. Construed as a whole, the Agreement shows, so we think, an intent on the part of the parties that defendant should take over the insurance business and pay the insurance liabilities shown on the books of the American Old Line. Moreover, the oral testimony heretofore noted discloses without dispute that there

was neither the intent nor purpose that any bank stock liability be assumed by the defendant. Under such circumstances, it has been held that greater weight will be given to the intention of the parties than to any particular word which may have been used in expressing that intent. Dowiat v. The People, 193 Ill. 264, 267, 61 N.E. 1059. In Wilkin v. Citizens National Bank of Paris, 298 Ill.App. 38, 18 N.E.2d 251, 255, the foregoing rule was applied to a contract of guarantee of payment of "liabilities" of a banking association. The court held that "liabilities," as used in that contract, was ambiguous and limited the meaning of the term to "deposit or public liabilities" of the bank.

Again, in Kilburg v. Petrolagar Laboratories, 280 Ill.App. 527, the court denied the claim of a third party beneficiary on defendant's contractual agreement to "pay all bills and invoices for labor and material, as contracted, as and when the same become due and payable." The court held that the contract was not entered into for the direct benefit of plaintiffs (a third party), but that the benefit to them was merely incidental.

Plaintiffs also rely upon certain assumption language contained in three other documents: (1) the minutes of a meeting of the Board of Directors of American Old Line, ratifying the Re-insurance Agreement with the defendant; (2) the bill of sale executed by American Old Line by which certain of its assets were conveyed to the defendant; and (3) a letter written by defendant to the Superintendent of Insurance of the State of Illinois. The minutes of the directors' meeting recite among other things, "all of the outstanding business of this corporation is reinsured and all liabilities assumed by said The Ohio National Life Insurance Company." The bill of sale contains the following statement: "For and in consideration of the assumption by The Ohio National Life Insurance Company of Cincinnati, Ohio, of all valid contracts and every other contract and obligation of every kind and character * * *." The letter from defendant to the Superintendent of Insurance of the State of Illinois requests the transfer to defendant of all of the securities on deposit to the credit of the American Old Line and includes the following statement: "According to the contract between The American Old Line Insurance Company and The Ohio National Life Insurance Company, we assumed all of their liabilities and took title to all of their assets." The language in these documents is similar to that contained in the Re-insurance Agreement and in our view adds nothing thereto. At any rate, we find it more reasonable to conclude, consistent with the oral testimony, that the parties intended to include only liabilities connected with the insurance business and not those foreign thereto.

Furthermore, the bill of sale had attached thereto Exhibits A and B. The former contained a list of the transferred securities and the latter a list of those not transferred, or in other words those which remained the property of American Old Line. Included in Exhibit B is the bank stock involved in this suit. As heretofore shown, this bank stock was considered and treated by the parties as an asset rather than a liability. So far as this record discloses, the parties even if they had given consideration thereto, which is doubtful, had no reason to think that it was a liability at that time. We are unable to perceive any rational basis on which it can be thought that the parties intended that defendant should assume a liability which might or might not mature at some future date. Particularly is this so when ownership of the bank stock by the terms of the bill of sale remained with the American Old Line.

The letter to the Illinois Insurance Commissioner also by its own words casts doubt upon plaintiffs' interpretation. "We assumed all of their liabilities" must be read in connection with "and took title to all of their assets." As shown, Exhibit B attached to the bill of sale contained a long list of assets, ownership of which was retained by American Old Line. It is, therefore, evident that the word "all" as applied to assets was intended to include only those which were actually taken over and not those which had no connection with the business of insurance. By the same token, "all" as applied to liabilities was intended to include those which related to the same business.

There is other proof, not disputed, which militates against an intent on the part of defendant to assume the bank stock liability. For instance, it is shown without dispute that the purchase price paid by the defendant was fair and reasonable without the assumption of any bank stock liability, and that no allowance or deduction was

made in the purchase price on account thereof.

Here again, the Master and the trial court found that the defendant did not assume or agree to pay the liability herein sought to be enforced. In our judgment, such finding has ample support in the record and must be accepted. The decree of the District Court is affirmed.